UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARQUISE POLLOCK,

      Plaintiff,

vs.                                 Case No. 3:20-cv-764-BJD-JBT

ROBERT BROWN, et al.,

      Defendants.

_____

## ORDER

### I. Status

Plaintiff Marquise Pollock is proceeding on a pro se Civil Rights Complaint (Complaint) (Doc. 1) against Robert Brown, a Sergeant at Florida State Prison (FSP), B. Allen, a corrections officer at FSP, and William Hall, a Captain at FSP.  In his Complaint, Plaintiff asserts violations of the Eighth Amendment, claiming Defendants Brown and Allen used excessive force causing serious physical injury and Defendant Hall failed to intervene or protect Plaintiff from the Defendants' excessive use of force.  Id. at 6-8.[1] Plaintiff also raises a state law claim of assault and battery against Defendants Brown and Allen.  Id. at 6-7.

---

[1]  Page numbers reflect the pagination assigned by the Court's electronic docketing system, which are found at the top of each page.

Plaintiff alleges, while he was confined at FSP, Defendants Allen and Brown used excessive force against Plaintiff on February 17, 2017. Id. at 5, 9-13. As relief, Plaintiff seeks a declaratory judgment and compensatory and punitive damages.[2]  Id. at 13-15.  Defendants filed an Answer, Affirmative Defense [qualified immunity], and Demand for Jury Trial (Answer) (Doc. 25).

Before the Court is Defendants' Motion for Summary Judgment (Motion) (Doc. 34).  See Summary Judgment Notice (Doc. 35).  Defendants also filed a Supplemental Filing in Support of Motion for Summary Judgment (Doc. 37) and Defendants' Additional Supplemental Filing in Support of Motion for Summary Judgment (Doc. 38).  Plaintiff filed a document entitled, "Defendant's Motion for Summary Judgment/Dismiss Must Fail" (Response) (Doc. 36).

## II. Summary Judgment Standard

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[2] Although Plaintiff seeks as part of the requested declaratory relief "[t]he physical assault and unnecessary use of force by the cell extraction team were part of an on-going official custom[,] policy[,] and practices at Florida State Prison that resulted from inadequate training[,]" upon review, Plaintiff has failed to state a claim that any of the named Defendants were involved in implementing or adopting a policy and practice of inadequate training.  Furthermore, he has not alleged facts supporting a claim of the adoption of such a policy or that an entity's custom or practice was the moving force behind any constitutional violation.  Complaint at 14.

An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (per curiam)

(internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## III. Complaint

In his Complaint, which is verified under penalty of perjury,[3] Plaintiff describes the alleged use of excessive force and assault and battery at FSP on February 17, 2017. In pertinent part, according to Plaintiff, Lt. Thompson was summoned to B-Wing to have Plaintiff placed on 72-hour property restriction for allegedly having his cell window covered. Complaint at 9. Upon arriving at Plaintiff's cell-front, Lt. Thompson directed Plaintiff to submit to hand

---

[3] The factual assertions a plaintiff makes in a verified complaint satisfy "Rule 56's requirements for affidavits and sworn declarations," and are therefore given the same weight as factual statements made in an affidavit. Stallworth v. Tyson, 578 F. App'x 948, 950 (11th Cir. 2014) (per curiam). Of note, Plaintiff adopts his Complaint, referring to it as his sworn affidavit or statement under penalty of perjury. Response at 4. Upon review, the Complaint is sworn under penalty of perjury. Complaint at 15. Thus, this Court must treat Plaintiff's statements in the verified Complaint as the equivalent of an affidavit for purposes of summary judgment. Sears v. Roberts, 922 F.3d 1199, 1206 (11th Cir. 2019).

restraints and relinquish his property in order to be placed on 72-hour property restriction. Id. Plaintiff refused. Id. Defendant Hall approached Plaintiff's cell and advised Plaintiff that he must relinquish his property or chemical agents would be utilized to gain Plaintiff's compliance. Id. Plaintiff refused. Id. Defendant Hall told Plaintiff that if went all the way, requiring the cell extraction team (CET) to be summoned to enter Plaintiff's cell, Hall was going to allow the team to "f---" Plaintiff up. Id. Plaintiff again refused. Id.

At this point, chemical agents were administered against Plaintiff.[4] Id. Plaintiff refused to submit to hand-restraints to be placed on property restriction, and the CET was summoned to extract Plaintiff from his cell. Id. at 10. Defendant Brown, a member of the CET, stood in front of Plaintiff's cell door at an angle in an attempt to keep Plaintiff from running out of his cell once the chain was taken off of the cell door. Id. Defendant Brown placed leg irons around his right fist. Id. When the chain was released from the cell door and Defendant Hall opened the door further, Plaintiff pushed his way out of the cell backwards in order to be seen on camera. Id. With his left hand, Defendant Brown grabbed Plaintiff by his T-shirt. Id. With his right hand, Defendant Brown struck Plaintiff twice in the right facial eye area. Id. After struggling for a few seconds, Plaintiff laid down between his cell and the cell

---

[4] There is no numbered paragraph 21 in the Complaint. Complaint at 9-10.

next door, attempting to submit himself to restraints. Id. While Plaintiff was prone on the floor, Defendant Hall told the CET to drag Plaintiff back inside his cell. Id. Once Plaintiff was on the floor, he did not resist or attempt to get up off the floor. Id. at 11.

The CET drug Plaintiff into his cell. Id. The CET "attempted to fold Plaintiff up" in the corner where a cell locker used to be located. Id. With his right fist, wrapped in leg irons, Defendant Brown hit Plaintiff on the right side of Plaintiff's face/eye. Id. When Plaintiff turned his head to the left, Defendant Brown punched Plaintiff on the left side of his face in the temple area, causing a laceration. Id. Defendant Allen, who had handcuffs around his right hand, began slamming the right side of Plaintiff's head into the floor. Id. Defendant Allen then punched Plaintiff on the top of his head. Id.

Defendant Hall was present and "had substantial knowledge" Plaintiff would be physically assaulted, particularly when Hall directed the team to drag Plaintiff back in the cell. Id. at 12. Defendant Hall failed to intervene. Id. He said "stop resisting" although Plaintiff was not resisting. Id.

Afterwards, Plaintiff was taken to Jacksonville Memorial Hospital. Id. He received eight stitches below his right eyebrow and two to three stitches on top of his right eyelid. Id. Additionally, he suffered a deep laceration to the left side of his head, abrasions on top of his head, a laceration to the corner of his right eye, and multiple lacerations to his left lower back. Id. at 12-13.

Plaintiff states he suffered emotional and psychological injuries, has nightmares, is on psychological medication, and has to wear eyeglasses due to the damage to his eye. Id. at 13.

## IV.  Motion for Summary Judgment

### A.  Defendants' Statement of Facts

Defendants, in their Motion, present a different version of the facts, while claiming the facts are undisputed. Motion at 3-6. In pertinent part, Defendants provide the following:

> Acting Warden C. Lane was then notified and authorized the use of the forced cell extraction team. The cell extraction team (#1 Sgt. Williams, #2 Defendant Allen, #3 Sgt. Duncan, #4 Sgt. Mckinney & #5 Defendant Brown) arrived cell front, and Defendant Hall ordered Pollock to comply with restraint procedures or the cell extraction team would be utilized, to which he remained non-compliant. The cell door was opened, and Sgt. Williams utilized the cell extraction protection shield to block the cell door opening and attempted to force his way into the cell. Pollock then forced his way out of the cell door, colliding headfirst with the shield. At this time, Sgt. Williams, Defendant Allen, Sgt. Duncan, Sgt. Mckinney and Defendant Brown forced Pollock to the floor. Pollock remained resistant to staff and struggled back to his feet. Defendant Hall ordered for the cell extraction team to force Pollock back into his cell. Defendant Allen and Sgt. Duncan then grasped Pollock's upper extremities and forced him back into his cell. Pollock then lunged forward, landing between the bunk and the foot locker [sic], striking his head. Pollock continued to be resistant and refused to place his hands behind his back. After several attempts, the hand and leg restraints were applied.

Id. at 4-5 (paragraph enumeration and citations omitted).

Comparing Plaintiff's sworn version of the facts to Defendants' version of the facts, the renditions of the facts vary in critical aspects.  Although Plaintiff readily admits to refusing to submit to hand restraints and to turning over his property, his rendition of the facts diverges drastically from Defendants' version concerning the CET's actions, Plaintiff's related actions, and those of Defendant Hall once the CET team was called and attempted to extract Plaintiff from his cell.  Initially, Plaintiff alleges that Hall threatened Plaintiff with the use of the CET to beat Plaintiff up if he continued to refuse to comply with directives.  Plaintiff alleges Defendants Brown and Allen (members of the CMT) had restraint devices around their hands or fists during the altercation.  Plaintiff states he pushed his way out of the cell backwards, not frontwards.  Plaintiff alleges he was struck by Defendant Brown in the right facial eye area.  Plaintiff says he struggled for a few seconds outside the cell, then laid down and submitted to being restrained.  Defendants state that Plaintiff resisted and struggled back to his feet when he was outside of the cell.

While Plaintiff claims the Defendants attempted to fold Plaintiff up in a corner, Defendant Brown struck him with his fist wrapped in leg irons on both the right and left sides of his face, and Defendant Allen, with handcuffs around his right hand, slammed Plaintiff's head into the floor and punched the top of

Plaintiff's head, Defendants contend Plaintiff lunged forward in the cell, landing between the bunk and a footlocker, striking his head, while continuing to be resistant and refusing to be restrained.   Plaintiff denies there was a footlocker in his cell at that time.   Plaintiff alleges Defendant Hall knew the CMT would assault Plaintiff inside the cell and Hall failed to intervene when the assault happened, and he kept saying stop resisting when Plaintiff was not resisting.

## B.  Eighth Amendment

Defendants assert Plaintiff cannot meet the required elements to demonstrate that Defendants Brown and Allen used unjustified and excessive force and Defendant Hall failed to intervene.   Based on the renditions of the facts, Defendants may have used excessive force after Plaintiff alleges he submitted to being restrained when he was on the floor outside of his cell. Thus, it is logically possible both that Plaintiff engaged in disorderly conduct and Defendants Brown and Allen used excessive force after Plaintiff submitted to being restrained and Defendant Hall failed to intervene.

The Eighth Amendment's proscription against cruel and unusual punishment "prohibits the unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification." Ort v. White, 813 F.2d 318, 321 (11th Cir. 1987).  It follows that the Eighth Amendment prohibits "punishment grossly disproportionate to the severity of the offense." Id.  In the

analysis of use of force incidents, courts must be mindful that interference in matters of internal prison administration and inmate discipline is generally discouraged but not without exception.  Id. at 322.  "The Court's decisions in this area counsel that prison officials should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 322 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)).  However, courts must balance concerns of an inmate's right to be free from cruel and unusual punishment with a prison official's obligation to ensure a safe and secure institution.  Id. 321-22.

Because of the deference afforded prison officials, an inmate against whom force is used to restore order or quell a disturbance demonstrates an Eighth Amendment violation only when the official's action "inflicted unnecessary and wanton pain and suffering."  Id. (internal citations omitted). See also Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir. 1991) (per curiam) (quoting Whitley v. Albers, 475 U.S. 312 (1986)) ("The Supreme Court has held that . . . any security measure undertaken to resolve [a] disturbance gives rise to an Eighth Amendment claim only if the measure taken 'inflicted unnecessary and wanton pain and suffering' caused by force used 'maliciously and sadistically for the very purpose of causing harm.'") (emphasis is original), cert. denied, 505 U.S. 1208 (1992).  If an officer uses force to quell a

10

disturbance, the use of force should cease once the inmate has been restrained or controlled.  A continued use of harmful force may constitute punishment in violation of the Eighth Amendment if the behavior giving rise to the need for force has ceased.  Ort, 813 F.2d at 324.

Five factors are to be considered in determining whether an officer's use of force was in good faith or carried out maliciously and sadistically for the purpose of causing harm:

> (1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.

Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999) (quoting Whitley, 475 U.S. at 321; Hudson v. McMillian, 503 U.S. 1, 7 (1992)).  See also Ort, 813 F.2d at 323; Williams, 943 F.2d at 1575.

In their Motion, Defendants do not claim per se that Plaintiff suffered a de minimis injury.  Thompson v. Smith, 805 F. App'x 893, 901 (11th Cir. 2020) (to be deemed a physical injury, the injury must be more than de minimis although it need not be significant) (quotations omitted) (citing and quoting Harris v. Garner, 190 F.3d 1279, 1286 (11th Cir.) vacated, 197 F.3d 1059 (11th Cir. 1999), reinstated in relevant part, 216 F.3d 970 (11th Cir. 2000) (en banc)). The medical staff at the institution diagnosed Plaintiff with severe lacerations

11

to his right eyelids and head trauma and the doctor ordered an immediate transfer to Memorial Hospital.  (Doc. 36-3 at 6).  Plaintiff's eye and torso were swelling after the incident.  Id. at 7.  At the hospital, Plaintiff complained of a headache (facial pain).  Id. at 2.  Multiple areas of swelling were noted in the posterior scalp as well as periorbital tenderness with swelling.  Id. at 3.  Laceration management required sutures; however, a facial fracture and intracranial hemorrhage were ruled out.  Id. at 4-5.

In their Motion, Defendants Brown and Allen submit that the use of force was reasonable and necessary under the circumstances, Motion at 8-11, and Defendant Hall contends, "there was nothing for Defendant Hall to intervene in or prevent."  Id. at 12.  Defendants describe the use of force as totally reactionary to Plaintiff's unjustified acts of force and his failure to obey lawful commands, justifying Hall's order to return Plaintiff to his cell to be restrained.

Curiously, although it is noted in the Defendants' exhibits that the use of force was videotaped, both with a handheld camera and a wing camera, neither videotape has been presented to the Court.  (Doc. 34-1 at 1; Doc. 34-2 at 1).  Thus, the Court is left with contradictory versions of the incident.  Here, Defendants may have used excessive force after Plaintiff claims he was no longer resisting in front of his cell, submitting himself to being restrained.  Plaintiff's states in his verified Complaint, after he was outside of his cell, after a brief struggle, he submitted to being restrained by lying down but was then

12

dragged back into his cell by the CET and unnecessarily beaten. This contention supports recovery under § 1983.

Notably, Defendants' version of the events describes Plaintiff as resisting staff and struggling back to his feet outside of the cell, prompting Defendant Hall to order the CET to force Plaintiff back into his cell. (Doc. 37-1 at 2; Doc. 37-2 at 3; Doc. 37-3 at 2; Doc. 38-1 at 2). Once inside the cell, Defendants claim Plaintiff lunged forward, landing between the bunk and a footlocker, striking his head, and refusing orders to submit to hand restraints. (Doc. 37-1 at 2-3; Doc. 37-2 at 4; Doc. 37-3 at 2; Doc. 38-1 at 2-3). Plaintiff denies that a footlocker was present inside of the cell, and alleges Defendants Allen and Brown attempted to fold him up; Defendant Brown, with his fist wrapped in leg irons, hit Plaintiff on the right side of his face; Defendant Brown punched Plaintiff on the left side of his face in the temple area; Defendant Allen, with handcuffs wrapped around his right hand, slammed the right side of Plaintiff's head into the floor and punched Plaintiff on the top of his head; and Defendant Hall ordered the CET to drag Plaintiff back into the cell and failed to intervene.[5] Complaint at 10-11.

Here, the medical records are relatively consistent with Plaintiff's allegations and the injuries recorded by medical staff are more than *de*

---

[5] Even assuming Plaintiff's version of the events may be of doubtful veracity, it is improper for this Court to make credibility choices at the summary judgment stage. Bowden v. Stokely, 576 F. App'x 951, 954 (11th Cir. 2014) (per curiam).

*minimis*.  Plaintiff's description of the actions taken by Defendants Allen and Brown would be the sort repugnant to the conscience of mankind.  Any failure of Defendant Hall to intervene under the circumstances described by Plaintiff would also be repugnant to the conscience of mankind.

Significantly, Plaintiff exhibited more than superficial bruises or abrasions after the incident.  His injuries prompted the prison doctor to order Plaintiff's immediate transportation to a hospital for examination and treatment.  Multiple areas of swelling to posterior scalp were noted, two lacerations to the right upper eyelid were found to require stitches, and there was right periorbital tenderness with swelling.  In sum, Plaintiff suffered both facial lacerations and head injuries.

Plaintiff has submitted enough, through his verified and sworn Complaint and his medical exhibits, to show there is a genuine issue for trial. Plaintiff's version of the events is not blatantly contradicted by the record. Plaintiff alleges there was no longer a legitimate safety threat once he ceased resisting and submitted to being restrained outside of his cell.  Therefore, there is an inference, based on Plaintiff's description of the incident, that Defendants acted wantonly when Hall directed that Plaintiff be drug into his cell, Defendants Brown and Allen allegedly used an unreasonable and disproportionate amount of force inside the cell, and Defendant Hall allegedly failed to intervene.  Indeed, Plaintiff's rendition of the facts is contrary to

14

Defendants Brown and Allen's contention they used a tempered and measured forceful response to Plaintiff's recalcitrance and there was no need for Defendant Hall to intervene. As such, Defendants' Motion is due to be denied.

### C. Qualified Immunity

Defendants invoke qualified immunity. Motion at 12-14. An officer sued in his individual capacity "is entitled to qualified immunity for his discretionary actions unless he violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009)). Qualified immunity allows officers to exercise their official duties without fear of facing personal liability. Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018). The doctrine protects all but the plainly incompetent or those who knowingly violate an inmate's constitutional rights. Id.

Upon asserting a qualified immunity defense, a defendant bears the initial burden to demonstrate he was acting in his discretionary authority at the relevant times. Dukes v. Deaton, 852 F.3d 1035, 1041-42 (11th Cir.), cert. denied, 138 S. Ct. 72 (2017). Here, the uncontradicted evidence demonstrates Defendants were acting within the scope of their discretionary duties at the time of the alleged incidents, which Plaintiff does not dispute. As such,

Defendants carry their burden on qualified immunity and the burden now shifts to Plaintiff.

To overcome a qualified immunity defense, a plaintiff bears the burden to demonstrate two elements: the defendant's conduct caused plaintiff to suffer a constitutional violation, and the constitutional violation was "clearly established" at the time of the alleged violation.  Alcocer, 906 F.3d at 951. "Because § 1983 'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation,' each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions."  Id. (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)).  As an individual assessment is necessary, the Court will analyze Plaintiff's excessive force claim against each Defendant separately.  The Court previously set forth the relevant Eighth Amendment principles.

Applying the relevant factors and viewing the facts in the light most favorable to Plaintiff, Defendants are not entitled to qualified immunity as to Plaintiff's claim of the excessive use of force and failure to intervene.  Under applicable Eighth Amendment jurisprudence, the factual discrepancy between the parties is material and must be resolved by a jury, not by the Court on summary judgment.  See Velazquez v. City of Hialeah, 484 F.3d 1340, 1342 (11th Cir. 2007) (per curiam) (holding the inmate's and the prison guards'

contradictory stories presented an issue of fact for the jury).  Cf. Sanks v. Williams, 402 F. App'x 409, 413 (11th Cir. 2010) (per curiam) (holding the district court properly granted summary judgment in favor of the defendant because the evidence showed the defendant "acted with the appropriate amount of force to [e]nsure his safety and maintain order, and ceased using force when it was no longer necessary").  In Sanks, the correctional officer ceased using force when the inmate stopped resisting, demonstrating the officer was acting in good faith in an attempt to restore order and not acting maliciously intending to cause the inmate harm.  Id. at 412.

At this juncture, the Court must accept Plaintiff's allegations as true and construe the evidence in a light most favorable to him.  Plaintiff describes conduct that, if true, rises to the level of an Eighth Amendment violation. Plaintiff alleges, after he stopped resisting and submitted to being restrained outside of his cell, Defendant Hall directed Defendants Brown and Allen to drag Plaintiff back into his cell, and Defendants Brown and Allen used unreasonable force upon him in the cell and Defendant Hall failed to intervene.

Even if the initial use of force by the CET was penologically justified, a jury could still find Defendants Brown and Allen used more force than necessary or continued using harmful force after Plaintiff had been subdued and submitted himself to being restrained.  Accepting Plaintiff's allegations as true, a reasonable jury could conclude Defendants used force against Plaintiff

unnecessarily and for the purpose of causing harm or used more force than necessary under the circumstances.  See Ort, 813 F.2d at 325 ("Prison officials step over the line of constitutionally permissible conduct if they use more force than is reasonably necessary in an existing situation."); see also Nasseri v. City of Athens, 373 F. App'x 15, 19 (11th Cir. 2010) (per curiam) ("It is excessive force for a jailer to continue using force against a prisoner who already has been subdued.").  As such, Defendants are not entitled to qualified immunity.

No video footage has been presented to the Court capturing the Defendants' use of force.  Consequently, the Court is unable to rely on video evidence to rule as a matter of law that the Defendants did not beat Plaintiff as he describes.  See Singletary v. Vargas, 804 F.3d 1174, 1183 (11th Cir. 2015) (citing Scott v. Harris, 550 U.S. 372, 377 (2007) (holding that where videotape footage clearly contradicted the non-movant's testimony, the district court should not have relied on the non-movant's testimony in resolving motion for summary judgment on an excessive force claim)).  If Plaintiff's allegations are true, a jury reasonably could conclude Defendants Brown and Allen used force against Plaintiff for no reason or as punishment after Plaintiff stopped resisting and physically defying orders and submitted himself to being restrained.  Plaintiff describes conduct which amounts to an Eighth Amendment violation.  Also, if Plaintiff's allegations are true, a jury reasonably could conclude that Defendant Hall failed to intervene in violation of the

18

Eighth Amendment.  Accordingly, Defendants Brown, Allen, and Hall are not entitled to qualified immunity.

Defendants rely on the Eleventh Circuit's holding in Pierre v. Padgett, 808 F. App'x 838 (11th Cir. 2020) (per curiam) to support their contention that they are entitled to qualified immunity.  In Pierre, however, the district court conducted a bench trial and made credibility determinations concerning the claim of excessive force.  Id. at 844-45.  The court found the plaintiff refused to comply, continued to resist while on the ground, and the officers acted reasonably in restoring order.  Id. at 845.  Given the district court's finding that the plaintiff actively resisted the officers while on the ground, the Eleventh Circuit found the district court did not err in concluding the officers used reasonable force to restore order.  Id.  Further, the Eleventh Circuit opined that the defendants would be entitled to qualified immunity.  Id. at 845-46.  Of import, the Eleventh Circuit explained:

> The district court noted that **had Plaintiff been compliant once brought to ground – that is, had he ceased resisting orders and physically defying the officers – the law is clearly established that the use of pepper spray at that point would have been excessive.**  Yet, having credited the testimony of the officers at the bench trial that Plaintiff had continued to kick and flail, refusing to obey the officers' directives to cease, the district court noted that there was no law clearly establishing that the use of pepper spray at this point would have constituted excessive force.  Accordingly, qualified

19

> immunity applied.  We agree with the district court's
> determination on this point as well.

Id. at 846 (emphasis added).

In conclusion, Plaintiff carries his burden on the first prong of the qualified immunity analysis as to Defendants Brown, Allen, and Hall.  Plaintiff asserts facts that, if true, demonstrate conduct proscribed by the Eighth Amendment.  Therefore, Defendants Brown, Allen, and Hall are not shielded by the doctrine of qualified immunity, which has no application when officers "knowingly violate an inmate's constitutional rights."  See Alcocer, 906 F.3d at 951.

When a plaintiff carries his burden on the first prong of the qualified immunity analysis in an excessive force case, the court need not proceed to the second prong.  The Eleventh Circuit has held, "where the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate." Bowden, 576 F. App'x at 955 (citation omitted).  Accordingly, Defendants' Motion is due to be denied to the extent they assert qualified immunity shields them from liability.

Therefore, it is now

**ORDERED**:

Defendants' Motion for Summary Judgment (Doc. 34) is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of March, 2022.


_____
BRIAN J. DAVIS
United States District Judge


sa 3/8
c:
Marquise Pollock
Counsel of Record